IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JOHNNY L. MARSHALL, JR., | : | |
| Plaintiff, | : | |
| VS. | : | Civil Action File No. |
| | : | 7 : 09-CV-33 (HL) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

**RECOMMENDATION**

The plaintiff herein filed an application for a period of disability and disability insurance benefits on January 5, 2006, and an application for Supplemental Security Income benefits on January 26, 2006; these applications were denied initially and upon reconsideration, and the plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 12, 2008. In a decision dated November 12, 2008, the ALJ denied plaintiff's claim. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted. This case is now ripe for review under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by

substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Social Security regulations provide for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits.  The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984).  Should a person be determined disabled or not disabled at any stage of the analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience.  20 C.F.R. § 404.1520.

The ALJ concluded that plaintiff had "severe" impairments of degenerative disc disease, status post L5-S1 laminectomy/discectomy with chronic low back pain, and post laminectomy syndrome/discogenic syndrome, and determined that plaintiff could not return to his past relevant work, but that he retained the residual functional capacity to perform a full range of light work and was therefore not disabled.

The medical evidence shows that plaintiff had an abnormal lumbar spine MRI, showing left S1 nerve root compression in April of 2004. (Tr. 397). Dr. George A. Morris III agreed with the radiologist that plaintiff had S1 nerve root compression, and recommended surgery. (Tr. 390-96). A hemilaminectomy/discectomy at the L5-S1 level was performed in August of 2004. (Tr. 459). Directly after the surgery, plaintiff continued to have a positive straight leg raise on the left and an absent right ankle jerk. He was told to use a lumbar brace and to avoid strenuous activities and heavy lifting. (Tr. 457-462).

Later that month plaintiff's orthopedic surgeon, Dr. Morris, noted that plaintiff reported that his pain appeared gone and his wound looked good. (Tr. 389). After two months Dr. Morris released plaintiff back to light work duty, hopeful that plaintiff would be able to return to more strenuous duty in a few weeks. (Tr. 385). But physical therapy, instead of lessening the pain, made it worse, so he was ordered to stop his physical therapy and rest. (Tr. 384).

Dr. Morris discharged plaintiff in November of 2004, three months after surgery, noting plaintiff still suffered from back pain, and finding he had reached maximum medical improvement with 12% partial disability. (Tr. 383). His physical therapist reported plaintiff was independent with his home exercise program and had a good prognosis. But his range of motion remained below functional levels, he continued to suffer from pain, and pain limited his progress. Additionally, the

discharge notes indicated that he failed to respond to therapy and further therapy was, therefore, contraindicated. (Tr. 423-425).

About two weeks after Dr. Morris discharged plaintiff, he returned to Morton Plant Hospital suffering right-sided low back pain. They prescribed Percocet for his pain. (Tr. 416-422). Still suffering low back and bilateral leg pain in January 2005, plaintiff sought a second opinion from Dr. Scott Webb, an orthopedic spine surgeon. Plaintiff said he could stand for only five minutes, walk only 50 to 200 feet, and needed to use a back brace. Dr. Webb found plaintiff's flexion and extension were limited, he was tender to palpitation bilaterally, and although his straight leg raise was negative, it reproduced back pain. (Tr. 370-372).

The same month plaintiff again was treated for continuing back pain at Morton Plant Hospital's emergency room. He was treated with Lortab, Soma, and Motrin for his pain. (Tr. 359-366). He also followed up with Dr. Webb requesting prescriptions for pain medication, and was referred back to his primary care physician. (Tr. 369).

Later in January 2005, a one-time consultative examiner for the Social Security Administration evaluated plaintiff. He had pain increasing with standing, walking, or sitting for 30 minutes or more, as well as difficulty walking, sitting, standing, bending, and lifting. While the consultant felt plaintiff was able to lift, carry, and handle light objects, he found plaintiff had decreased range of motion in his lumbar spine reproducing mild to moderate pain levels. He further found plaintiff's response to treatment was poor and his prognosis was only moderate. (Tr. 409-415). After the consultative exam, a non-examining agency consultant stated that plaintiff was limited to lifting 25 pounds, standing and walking for 6 hours, and sitting for 6 hours. (Tr. 401).

In February 2005, an MRI of plaintiff's lumbar spine showed an annular tear, left L5

foraminotomy, and an encroachment of the L4 nerve root. (Tr. 373). An EMG performed four days later showed no evidence of lumbosacral radiculopathy. (Tr. 331).

In April 2005, Dr. Webb referred plaintiff to Dr. Hanna for pain management. (Tr. 367-368). Dr. Hanna found plaintiff suffered constant pain, which increased with prolonged sitting, standing and walking. Dr. Hanna also found plaintiff had a positive straight leg raise bilaterally and diagnosed lumbar radiculopathy. Dr. Hanna found it was medically necessary that plaintiff wear a back brace, and prescribed Oxycodone and Soma for his pain. (Tr. 367-368).

Dr. Hanna continued to treat plaintiff, and his notes show that plaintiff required the continued use of a back brace as well as a cane for ambulation. (Tr. 289, 293, 286-88, 297-80, 265-66, 261-62, 259, 257-58, 256, 254, 251, 247-48, 242, 239, 235, 232, 229, 227, 224-25, 221-22). Treatment notes also show plaintiff was given an RS Stimulator for treatment of chronic muscle atrophy and pain (Tr. 256) and told he could pursue exercise as he is able, specifically bicycle riding. (Tr. 243). One examination found plaintiff's urine was positive for cannabis, and he was warned not to use marijuana again or else he would be discharged. (Tr. 310).

In June 2005 another non-examining consultant with the Social Security Administration found plaintiff could lift no more than 20 pounds, stand or walk for no more than six hours, and sit for no more than six hours. (Tr. 374-381).

Plaintiff presented to the Largo Medical Center emergency room in September 2005, complaining of lower back pain and swelling. (Tr. 346-351). He left before being examined, then returned two and a half hours later to complete his exam. Upon return, he was treated with medication and given follow-up instructions. (Tr. 334-335). Plaintiff returned for his follow up appointment five days later continuing to complain of bilateral lower back pain and expressing

concern regarding his kidney health given his current prescription for Fentanyl patches. (Tr. 374-381). In November 2005 a L3-S1 discogram revealed concordancy at L4-L5. (Tr. 297).

Another non-examining Agency consultant claimed that plaintiff could lift no more than 20 pounds, sit for six hours, stand and walk for six hours, never balance, and only occasionally complete all other postural activities. (Tr. 323-330). The last non-examining Agency consultant found that plaintiff was limited to lifting no more than 20 pounds, sitting for six hours, and standing and walking for six hours. He also found plaintiff's complaints were credible, and limited plaintiff to performing postural activities only occasionally. (Tr. 315-322).

In March 2006, in a one-page form, Dr. Hanna found that plaintiff has decreased lumbar flexion and extension, spasm of the lumbar spine, 5/5 bilateral upper extremity strength. Dr. Hanna also observed that plaintiff's gait and station was slow and cautious. Dr. Hanna did not say whether an assistive device was necessary for ambulation. (Tr. 285).

In December 2006, another MRI showed further degeneration of plaintiff's condition. It found fibrosis of the S1 nerve root, a central L5-S1 protrusion abutting the S1 nerve root, an L4-5 protrusion with an annular tear displacing the L5 nerve root, multilevel bilateral foraminal narrowing at L4-L5, and a protrusion abutting the existing left L3 nerve root. (Tr. 313-314).

In January 2007 Dr. Hanna described plaintiff's limitations. He diagnosed discogenic syndrome, lumbar post laminectomy syndrome, lumbar neuritis and radiculitis, and lumbar myofascial pain. Dr. Hanna said his clinical findings included spasm, paraspinal restriction, and painful range of motion of the lumbar spine. Dr. Hanna concluded plaintiff is not a malingerer. He found plaintiff's pain increases with standing, walking, and bending, and that he is limited to standing for 10 minutes at a time, for a total of less than two hours during an eight hour work day. Plaintiff's sitting is limited

to less than two hours in an eight-hour work day. He found that sitting/standing at will is required, that plaintiff can lift no more than 10 pounds, and that his pain is severe enough to interfere with attention and concentration to the extent it would preclude even simple work tasks on a frequent basis. Dr. Hanna also found that plaintiff can walk up to one city block but then must rest for 10 minutes, he may only rarely perform postural requirements, and would be expected to be absent from work because of his impairments or treatment more than four times per month. Dr. Hanna noted that plaintiff's impairments are reasonably consistent with the limitations found in his assessment. (Tr. 281-284).

On December 24, 2007, plaintiff went to the Sun Coast Hospital emergency room complaining of chronic, severe back pain, indicating his epidural had worn off. He was treated with intravenous Dilaudid for his pain. (Tr. 207-211, 215-220).

***Treating Physician***

Plaintiff states that the ALJ erred in failing to assign great weight to the opinion of his treating physician, Dr. Hanna.

The regulations at 20 C.F.R. § 416.927(d) provide specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. Additionally, the Eleventh Circuit has held that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when the "(1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records." *Lewis*, 125 F.3d at 1440).

As stated above, In January 2007, Dr. Hanna filled out an RFC questionnaire where he opined that plaintiff could stand ten minutes at a time with a total standing/walking time of less than two hours in an eight-hour workday; could sit less than two hours in an eight-hour workday with a need to include periods of walking around (with a cane) every five minutes with an option to shift positions at will; could lift ten pounds occasionally and less than ten pounds frequently; could rarely twist, stoop, crouch, and climb; and could use his hands, fingers, and arms less than 30% of an eight-hour workday (Tr. 282, 284). He also opined that plaintiff would need to take breaks every thirty minutes for ten minutes, his symptoms of pain were severe enough to frequently interfere with his attention and concentration, and he would likely be absent more than four days per month (Tr. 282-84).

The ALJ noted marked differences in the March 2006 report and the January 2007 report by Dr. Hannah.  The ALJ first noted that Dr. Hanna opined in his January 2007 evaluation that plaintiff could use his hands, fingers, and arms less than 30% of an eight-hour workday in contrast to his March 2006 form, where Dr. Hanna opined that plaintiff had a 5/5 grip strength bilaterally and "OK fine dexterity" (Tr. 18, 284-85).    The ALJ rejected Dr. Hanna's assertion that plaintiff "must" use a cane (Tr. 282) in light of the fact that Dr. Hanna often did not document use of a cane in his treatment notes (Tr. 243, 245, 249, 263, 267, 269, 271, 273, 277, 279, 286, 289, 291, 294, 304, 308-311).  The Commissioner states there is simply no evidence of trauma or aggravation between March 2006 and January 2007 or any other explanation of inconsistences between the two reports.

Plaintiff challenges the ALJ's finding that Dr. Hanna's statements regarding plaintiff's ability to walk were inconsistent with plaintiff's testimony and his notation that Dr. Hanna's March 2006

report was written to another Agency that may have evidentiary rules different than the Social Security Administration (Pl.'s Br. at 14; Tr. 18). The Commissioner states that remand for the ALJ to address the differences in the evidentiary rules required between the two agencies, even if considered error, would serve no practical purpose. However, this error is not inconsequential when considered in combination with the other errors noted elsewhere in this recommendation, and the fact that a one-page form from 2006 was used to completely discredit the social security form used by Dr. Hanna in 2007.

While the ALJ noted Dr. Hanna's statement in the 2007 medical source opinion requiring the use of a cane, the ALJ rejected this requirement claiming Dr. Hanna "does not document such use in treatment notes throughout his care (Tr 18). While it is true that Dr. Hanna did not document the use of a cane each and every time plaintiff was treated by him, he also did document the use many times over the course of his treatment relationship with him. (Tr. 265-56, 261-62, 259, 257-58, 281-84, 256, 254, 251, 247-48, 242, 239, 237-38, 235, 232, 229, 227, 224-25, 221-222).

The ALJ's requirement that the use of a cane be documented each time plaintiff was treated by Dr. Hanna in order to find the use of cane significant enough to substantiate plaintiff's complaints of pain and difficulty at times with ambulation is troubling. Failure to mention a cane each time was used both to discount Dr. Hanna's opinion evidence and the plaintiff's own credibility. While the evidence cannot re-weighed, it does appear that the ALJ ignored the many times the cane was mentioned in Dr. Hanna's treatment notes, instead choosing to mention only the times it was not mentioned. This decision was not based upon substantial evidence, as it mischaracterizes the evidence in the record that supports Dr. Hanna's opinion that plaintiff needs a cane.

*Credibility*

9

Plaintiff asserts error in the ALJ's discounting of his subjective complaints and credibility. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt v. Sullivan*, supra at page 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.1986). The ALJ may consider the nature of a plaintiff's symptoms, the effectiveness of medication, a plaintiff's activities, and any conflicts between a plaintiff's

statements and the rest of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

The ALJ concluded that plaintiff's complaints about the severity of his pain were not supported by the clinical and laboratory evidence (Tr. 15-16). Plaintiff argues that the ALJ did not consider the entire record, and ignored evidence pertaining to his physical therapy, need for an RS Stimulator, a cane, and his report of daily activities. The Commissioner responds that there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, . . . is not a broad rejection which is 'not enough to enable [the district court . . . ] to conclude that [the ALJ] considered [his] medical condition as a whole.'" *Foote*, 67 F.3d at 1561.

The undersigned is unable to conclude that the rejection of plaintiff's credibility was based upon substantial evidence. As stated above, the ALJ rejected both Dr. Hanna's and plaintiff's assertion that plaintiff had to use a cane. Moreover, failing to address the need for an RS Stimulator and his testimony regarding his daily activities, on this record, was not harmless error, as both could bolster plaintiff's credibility that his pain is disabling or further limits his ability to perform work.

*Residual Functional Capacity/ the "Grids"*

Plaintiff argues that the ALJ's residual functional capacity assessment was not supported by substantial evidence. The determination of RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. SSR 96-5p (<http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html>). The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the evidence in the record. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546 ©, 416.927(e)(2), 416.945(a)(3), 416.946©. Relevant medical and other evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and

observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Plaintiff argues that the ALJ failed to consider his pain and his use of a cane to assist in ambulation in assessing his RFC. The ALJ found that plaintiff's back pain, along with his other impairments, "preclud[ed] [Plaintiff] from sustaining very heavy, heavy, and medium exertion work" (Tr. 19; Tr. 12, Finding No. 3). Pain can be considered either an exertional or non-exertional limitation. See 20 C.F.R. §§ 404.1569a(b), 416.969a(b) ("[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations").

"Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985). The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation. *Smith v. Bowen,* 792 F.2d 1547, 1554 (11th Cir.1986); *see* 20 C.F.R. § 1416.969; 20 C.F.R. pt. 404, subpt. P, app. II § 200.00(a). The grids also may not be used when the claimant's non-exertional impairments are severe enough to preclude a wide range of employment at the level indicated by the exertional impairments. *Smith*, 792 F.2d at 1554; 20 C.F.R. pt. 404, subpt. P, app. II § 200.00(e). Non-exertional impairments include "postural and manipulative limitations, and must be considered in determining a claimant's residual functional capacity." 20 C.F.R. § 416.945(d). The use of an assistive device to ambulate can be considered a manipulative limitation. *See* 20 C.F.R. § 416.945(d).

As stated above, the ALJ erred in the consideration of plaintiff's use of a cane for ambulatory assistance. Upon remand, the ALJ should use a vocational expert regarding whether plaintiff can still perform a full range of light work if he has to use a cane, especially as light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*See* 20 C.F.R. § 416.967.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is RECOMMENDED that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration in light of this opinion. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS of receipt thereof.

**SO RECOMMENDED**, this 2nd day of March, 2010.

                                            **S/ G. MALLON FAIRCLOTH**
                                            **UNITED STATES MAGISTRATE JUDGE**

msd